STATE OF LOUISIANA

VERSUS

ELIAS E. ABREGO-ZAMBRANO

NO. 24-KA-133

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-1257, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

December 18, 2024

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Marc E. Johnson

<u>**AFFIRMED; REMANDED WITH INSTRUCTIONS**</u>
    **JGG**
    **FHW**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Matthew R. Clauss

COUNSEL FOR DEFENDANT/APPELLANT,
ELIAS E. ABREGO-ZAMBRANO
Michael H. Idoyaga

**GRAVOIS, J.**

Defendant, Elias E. Abrego-Zambrano, appeals his convictions and sentences for one count of first degree rape, two counts of sexual battery, and two counts of indecent behavior with a juvenile. For the following reasons, we affirm defendant's convictions and sentences. We further remand the matter to the trial court with instructions to the trial judge to inform defendant of the registration requirements for sex offenders by sending appropriate written notice to defendant and to file written proof in the record that defendant received such notice.

## PROCEDURAL HISTORY

On June 17, 2021, a Jefferson Parish Grand Jury returned an indictment charging defendant, Elias E. Abrego-Zambrano, with "first degree rape (known as Aggravated Rape prior to August 1, 2015) upon known juvenile (DOB 09/08/2006)," in violation of La. R.S. 14:42 (count one); "sexual battery upon a known juvenile (DOB 09/08/2006) wherein the child was under the age of thirteen," in violation of La. R.S. 14:43.1 (count two); and indecent behavior with a known juvenile (DOB 09/08/2006) wherein the victim was under the age of thirteen, in violation of La. R.S. 14:81 (count three). Counts one through three were alleged to have occurred on or between February 11, 2014 and September 7, 2017. In the same indictment, defendant was also charged with indecent behavior with a known juvenile (DOB 02/10/2001) wherein the victim was under the age of thirteen, in violation of La. R.S. 14:81 (count four); and "sexual battery upon a known juvenile (DOB 02/10/2001) wherein the child was under the age of thirteen," in violation of La. R.S. 14:43.1 (count five). Counts four and five were alleged to have occurred on or between July 1, 2012 and February 9, 2014. Defendant pled not guilty to all of the charges.

The case proceeded to trial on October 16, 2023. On October 18, 2023, the twelve-person jury returned unanimous verdicts of guilty as charged as to each

count. On October 26, 2023, after victim impact statements were heard, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count one; fifty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count two; twenty-five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count three; twenty-five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count four; and fifty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count five. The trial court ordered counts one, two, and three to run concurrently with each other, and counts four and five to run concurrently with each other but consecutively to counts one, two, and three. This timely appeal followed.

## FACTS

In September 2009, Delmy Carolina Suazo Rivera and her now ex-husband, Marco Membreno, moved to the United States from Honduras with their three daughters Andrea Membreno, D.M., and G.M.[1] Due to financial difficulties, Ms. Suazo Rivera, Mr. Membreno, D.M., and G.M. lived with defendant and his wife, Carla Patricia Meja-Rivera, during two separate time periods, in 2012 and in 2014. Ms. Suazo Rivera and Mr. Membreno testified that they knew defendant because they were from the same town in Honduras. Defendant's three-bedroom home was located at 104 John Hopkins Drive in Kenner, Louisiana.

G.M. testified she was seven years old when she lived with defendant.[2] She and D.M. shared a room, her mother and father shared another room, and

---

[1] In the interest of protecting minor crime victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), this Court's policy is that its published works will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (*i.e.*, parent, sibling, or relative with the same last name as the victim). *State v. McGinnis*, 23-472 (La. App. 5 Cir. 7/31/24), 392 So.3d 963, 966. *See also* Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

[2] Ms. Suazo Rivera testified G.M. turned eight in September 2014.

defendant and his wife shared a room. Her mother would occasionally go to Virginia, and on such occasions, G.M. stayed with her father in the house. When she got home from school, her sister and either defendant or his wife would be at the house.

While they lived with defendant in 2014, Mr. Membreno and Ms. Suazo Rivera separated and eventually got divorced. G.M. testified that during this time, defendant would give her extra attention that was inappropriate. He would hug her and feel around her back, which made her uncomfortable. He would also sit very close to her while she was watching television in the living room and put his hands on her thigh, chest, and vagina. It started over her clothes, but then moved to under her clothes and underwear. Defendant used his hands and later used his "genital area" as well.

G.M. recalled a specific incident when she was watching a show on Disney called "Sophia the First." Defendant stood in front of her, unzipped his pants, and asked her if she wanted to give him oral sex. She did not know what to say and was really confused, but she complied. She testified that he made her put her mouth on his genital area and grabbed her head to have a better hold of her. He asked her if she was enjoying it. She recalled semen coming out of his genital area and landing on the couch. He asked her again if she enjoyed it, and she said yes. Afterwards, she went to the hall bathroom to rinse her mouth. She recalled not liking mint toothpaste, but used it because she was really upset. She stated she felt dirty and kept brushing her teeth until she felt okay.

G.M. recalled other occasions when defendant abused her on the couch. She and defendant would be alone often because her sister would be in her room, and her father would be at work. On multiple occasions, he put his penis into her vagina and would ask her how it felt and if she liked it. Sometimes she would be sitting or lying on the couch, or he would make her stand or kneel. G.M. testified

24-KA-133                                          3

to feeling pain afterwards and feeling an urgency to urinate. She recalled having accidents in school and urinating on herself. On another occasion, she had a sparkly dress on from "the Justice store." He made her take it off, and he touched her chest and genitals. G.M. also recalled that defendant and his wife would act inappropriately in front of her. Sometimes defendant would be sitting on the sofa, and his wife would have her head buried in his "crotch area." This made her feel uncomfortable to see as a child.

She moved out of defendant's home when she was in the third grade and moved into a friend of her mother's home. She visited defendant's home again when she was approximately ten years old. Defendant and his wife expressed to G.M.'s mother that they missed G.M. Her mother felt bad because she was under the impression that they could not have children. G.M. eventually felt bad as well and did not want to keep declining, so she went. When she got there, they took her to a room to watch television, and defendant came in alone. He sat on the bed and started kissing her. She pushed him away and went to tell his wife what happened. His wife confronted him about it, but he denied it. His wife called G.M. a liar and told her she had learned these things from school. They told her they were going to take her back home. She asked them not to tell her mother, and they took her to the park to talk and told her they must have told her at school that she was being abused.

G.M. testified that she did not say anything when the abuse was happening when she was seven because her parents were divorcing and fighting, and she thought that if she said anything, something bad would happen to them. When she was approximately twelve years old, she told her father about the incident that happened when she was ten. She did not tell him about the prior abuse. Her father told her mother and sister.

When G.M. was around twelve years old, she began cutting herself on her wrists and legs. Her mother took her to a therapist.[3] She was thirteen years old when she was checked into a facility for self-harming. After she told her therapist about the sexual abuse, she went to Children's Hospital. She stayed at the psychiatric hospital and then got assigned a new therapist and psychiatrist. Subsequently, Aubrey Ziegler, who worked with the Gretna Police Department as a Forensic Interviewer at the Jefferson Children's Advocacy Center, conducted a recorded interview of G.M. G.M. also saw Dr. Anne Troy at the Care Center who did a "medical inspection" on her.

Dr. Megan Elizabeth Campbell, accepted by the court as an expert in the field of child, adolescent, and adult psychiatry, treated G.M. at Children's Hospital in February 2020. G.M. was admitted to the hospital on February 24, 2020 for a "Physician's Emergency Commitment" for "suicidal ideation." G.M. reported "non-suicidal, self-injurious behavior" for approximately two years. Dr. Campbell's notes provided that G.M. cut herself daily with a pencil sharpener blade. G.M. reported that she was sexually abused by a family friend when she was seven, and it made her have suicidal thoughts. This had been going on for some time before she reported the sexual abuse.

Dr. Campbell testified that G.M. demonstrated symptoms that were consistent with major depressive disorder. Dr. Campbell explained that G.M. had hallucinations. G.M. reported seeing large bugs on the wall and hearing insults from classmates. These were some perceptions of auditory hallucinations that were examined under schizophrenia. However, Dr. Campbell testified that it is only one symptom in an isolated context and was not indicative or consistent with a diagnosis of schizophrenia. Dr. Campbell testified that hallucinations come in a

_____

[3] Ms. Suazo Rivera testified that G.M. started to see a therapist in 2019 when she was in the eighth grade because she started behaving differently and was declining in school.

wide range and occur in various types of disorders (like post-traumatic stress disorder, social anxiety, and social paranoia) and also in healthy individuals. G.M. demonstrated symptoms of generalized anxiety disorder and post-traumatic stress disorder. G.M. was discharged on February 27, 2020. Dr. Campbell reported the sexual abuse to the Department of Children and Family Services ("DCFS").

Dr. Anne Troy, a forensic nurse practitioner at Children's Hospital and an expert in child sexual abuse pediatrics, examined G.M. on May 18, 2020. G.M. was referred after having a forensic interview and disclosing a history of sexual abuse. In her report, Dr. Troy wrote that G.M. was afraid to tell her father about the sexual abuse. G.M. told her that at ten years old defendant tried to force a kiss on her and that when she was between the ages of seven and eight, there was penal-vaginal penetration and his penis had been near her buttocks. She also stated that there had been penal-oral contact.

Dr. Troy testified that what G.M. relayed to her was consistent with child sexual abuse. G.M. provided clear detailed sensory statements in her interview and reported multiple instances of sexual abuse to her. She testified that G.M. delayed reporting her abuse. On May 22, 2020, Dr. Troy conducted a physical examination of G.M., which resulted in a normal genital examination with no signs of trauma. Dr. Troy stated that she would not expect to find signs of trauma in a case of delayed disclosure.

D.M. testified that she lived with defendant when she was approximately ten and eleven years old. At the time, she had thyroid problems and her doctor recommended that she exercise. She would exercise with defendant and his wife. On one occasion, she was on the ground doing sit-ups with defendant, and he pulled her on top of him. He tried to get their "genitalia to rub against each other." She stated that they were clothed, but that his genitalia was erect and it would rub against her genitalia for his satisfaction. Defendant's wife was home, but she was

in a different room. D.M. testified that her parents were going through a divorce at this time. Her mother left to be in Virginia, and her father was not always home because of work and seeing other people. Her father would sometimes be gone for an entire day or two.

On another occasion, while defendant was watching T.V., defendant told D.M. to come toward him, and he picked her up and sat her down on his lap facing him with her legs open on him. He rubbed their genitalia together. D.M. testified that he had his clothes on, but his penis was erect, and she could feel it against her. Defendant would also try to go near her, stand behind her, rub against her, and touch her body with his hands. D.M. testified that on another occasion, while at the kitchen sink, defendant came up behind her and put his hands under her clothing to rub on her vagina. She remembered wearing leggings when this happened.

D.M. testified that she was eleven years old when the abuse occurred and this was nearly an everyday struggle she faced with defendant. She would try to avoid defendant and would run to her room and lock herself inside. She also deprived herself of food to be away from him.

D.M. disclosed the sexual abuse she suffered after the police got involved as a result of her sister's disclosure. G.M. had never told her about the sexual abuse and she felt guilty about not speaking up. She knew something was wrong when defendant abused her, but she was scared and ashamed. She was scared that no one would believe her or care about it.

Mr. Membreno testified that for a period of time, his ex-wife went to live in another state, and defendant and his wife would help him watch D.M. and G.M. He trusted defendant. He had been in an accident, so he was not working and would only leave the house for an hour to see a doctor and his lawyer. A few years after they moved into the house, while they were still living with defendant, G.M.

told him that defendant kissed her. He confronted defendant who told him that G.M. was lying. Mr. Membreno testified that a few years after G.M. told him about the kiss, she told him about it again. He stated she was mad at him for not doing anything about it. He told her that she should have told him exactly what happened to her.[4]

Detective Bryan Weiter, with the Kenner Police Department, investigated defendant in early 2020 in relation to a child sexual abuse complaint. After G.M.'s forensic interview at the Children's Advocacy Center, Detective Weiter met with D.M. and G.M. at the police station for follow-up questions. D.M. reported improper touching, and he took an audio-recorded statement from her. Based on the allegations and the disclosure, Detective Weiter applied for an arrest warrant for defendant, who was later arrested.

Defendant testified that he came to the United States with his wife in 2005. When the Membreno family was evicted from their home, he let them stay with him. They were not friends previously, but he knew them from Honduras. They stayed with him the first time for approximately three months. Two years later, they asked to stay again because of financial problems. Mr. Membreno was unemployed and involved in a lawsuit the entire second time they stayed at the house, and Mr. Membreno was in the house all the time, except for occasionally going to the doctor or his lawyer. Defendant testified that he was never alone in the house with G.M. or D.M.[5] He denied ever kissing, having sex, touching, or

---

[4] Brandi Bigelow, a victim witness assistance coordinator for the Jefferson Parish District Attorney's Office, testified that she was present for a meeting between the State and Mr. Membreno. At the meeting, Mr. Membreno stated that at the time he and his family lived with defendant in 2014, he worked offshore and would be gone from the house for days. She stated that during the meeting, Mr. Membreno also stated that G.M. only told him about defendant kissing her once.

[5] Carla Patricia Meja-Rivera, defendant's wife, stated that there were always people in the home and that neither G.M. nor D.M. complained to her about defendant's behavior.

Jennifer and Andrea Franco testified that they knew defendant through their family. Defendant and his wife helped them with homework. Jennifer testified that she never felt uncomfortable in defendant's home, and he never touched her or did anything inappropriate to

making lewd comments to G.M or D.M. He stated he never abused either of them and if he had, they would have told their mother or father. He only kissed G.M. on the cheek as a greeting one time when she came to visit.

## ASSIGNMENT OF ERROR NUMBER TWO

### *Sufficiency of the Evidence*

We first address defendant's second assignment of error, in which he argues that the State failed to meet its burden of proof because it did not present any evidence of the rape charge other than G.M.'s testimony.[6]

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. In the instant matter, defendant did not file such a motion; however, the failure to file a motion for post-verdict judgment of acquittal does not preclude appellate review of sufficiency of the evidence. *See State v. Faciane*, 17-224 (La. App. 5 Cir. 11/15/17), 233 So.3d 195, 205, *writ denied*, 17-69 (La. 10/8/18), 253 So.3d 797.

In reviewing sufficiency of the evidence, an appellate court must determine that the evidence, whether direct, circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a

---

her. Andrea testified that she could not remember if the Membreno family was living at the home when she visited and she did not see people coming and going from the house.

[6] When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the evidence in its entirety. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, in accordance with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. *Hearold*, 603 So.2d at 734. When addressing sufficiency of the evidence, consideration must be given to the entirety of the evidence, including inadmissible evidence that was erroneously admitted, to determine whether the evidence is sufficient to support the conviction. *Id. See also State v. Griffin*, 14-251 (La. App. 5 Cir. 3/11/15), 169 So.3d 473, 483.

reasonable doubt. *Jackson*, *supra*; *State v. Baham*, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, *writ denied*, 15-40 (La. 3/24/16), 190 So.3d 1189. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides: "[A]ssuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. *Baham*, *supra*. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. *Id.* The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702.

This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297. Further, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. McKinney*, 20-19 (La. App. 5 Cir. 11/4/20), 304 So.3d 1097, 1103.

In its determination of whether any rational trier of fact would have found the defendant guilty, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *Lane*, *supra*. The credibility of a witness, including the victim, is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Gonzalez*, 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1233. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *Clifton*, 248 So.3d at 703. In sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *Id.*; *State v. Raye*, 17-136 (La. App. 5 Cir. 10/25/17), 230 So.3d 659, 666, *writ denied*, 17-1966 (La. 6/15/18), 257 So.3d 674.

Defendant was convicted of one count of first degree rape (aggravated rape) upon a known juvenile in violation of La. R.S. 14:42, two counts of sexual battery where the child was under thirteen in violation of La. R.S. 14:43.1, and two counts of indecent behavior with a juvenile under thirteen in violation of La. R.S. 14:81. Defendant does not contest on appeal that the State failed to prove any specified statutory elements of La. R.S. 14:42, La. R.S. 14:43.1, or La. R.S. 14:81. Instead, he alleges that "the State did not present any evidence of the rape charge other than G.M.'s testimony."[7]

In *State v. Douglas*, 23-331 (La. App. 5 Cir. 2/28/24), 383 So.3d 266, 276, *writ denied*, 24-434 (La. 10/23/24), 2024 WL 4551474, this Court found that one

---

[7] Because defendant does not contest on appeal that the State failed to prove any specified essential statutory elements of first degree rape (aggravated rape) or his other convictions, it is not necessary for us to address the evidence as it relates to each essential element of first degree rape (aggravated rape), or defendant's other convictions. *See State v. Nelson*, 14-252 (La. App. 5 Cir. 3/11/15), 169 So.3d 493, 500 n.12, *writ denied*, 15-685 (La. 2/26/16), 187 So.3d 468.

victim's testimony, without the introduction of medical, scientific, or physical evidence, was sufficient to support the defendant's convictions of forcible rape and sexual battery. On appeal, the defendant questioned the victim's credibility and asserted that without eyewitnesses or DNA evidence, the jury did not have sufficient, credible evidence to support its verdicts against the defendant. *Id.* at 275. This Court stated that the victim testified to three incidents in which the defendant forced her to have vaginal sexual intercourse with him without her lawful consent. *Id.* at 277. It stated that based on the record, the jury found the victim to be a credible witness and believed her testimony. This Court found that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient under the *Jackson* standard to support the defendant's convictions. *Id.*

As previously discussed, in sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *Clifton*, *supra*; *Raye*, *supra*. In the instant matter, G.M. testified in great detail as to the multiple instances of sexual abuse by defendant. Despite defendant's argument that G.M. was the only witness that testified regarding the rape, the jury found G.M.'s testimony to be credible and believed her testimony over defendant's testimony in which he denied sexually abusing G.M. This Court should not second guess credibility determinations. *See State v. Chinchilla*, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1197, *writ denied*, 21-274 (La. 4/27/21), 314 So.3d 838, *cert. denied*, -- U.S. --, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021).

Accordingly, we conclude that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient under the standard set forth in *Jackson* to

support defendant's conviction of first degree rape (aggravated rape). This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

### *Disqualification of Defendant's Expert Witness*

Defendant also argues that the court erred in granting the State's motion to disqualify defendant's expert witness, Dr. Stephen Nelson. Defendant avers that Dr. Nelson would have testified as to children's impressionable nature, their susceptibility to being led by adults, and their possible fabrication of stories with different motivations. Defendant questions G.M.'s credibility and alleges she was a "troubled" child. He also claims D.M. came forward with a similar story to G.M.'s in order to support her. He avers that the defense was unable to counteract their testimony. Defendant alleges that the lack of an expert, particularly when the State had two, put him at a disadvantage.

The State responds that defendant's assignment of error in this regard is not preserved for review since he did not proffer the substance of Dr. Nelson's proposed testimony to the court.

In "Defendant's Notice of Expert Witness and Request for Additional Discovery Pursuant to La. CCR Art. 719" filed on December 4, 2022, defense counsel gave notice that he would call Dr. Nelson as an expert in child psychology. Defense counsel intended to offer Dr. Nelson's testimony "as to children's motivation for making false allegations in alleged sexual abuse cases, which encompass a need for attention, displaced anger at a parent who has deserted the family, the influence of the remaining parent, complicity with a parent in obtaining the 'U' visa, and other motivations." The notice provided that Dr. Nelson had reviewed the discovery in the case. Dr. Nelson's CV was also attached to the motion.

At a *Daubert*[8] hearing held on February 2, 2023, Dr. Nelson testified as to his background and qualifications listed on his CV. Upon examination by the State, Dr. Nelson confirmed that he would testify as to what defense counsel offered in his notice and his opinion testimony would encompass memory issues that could be involved in the reporting of children. When asked by the State if it was fair to say that he would testify as to the veracity of the child, he replied: "Yes and you know, not specifically a child but particularly these reports." The parties then presented argument to the court. Defense counsel asked the court to accept Dr. Nelson as an expert in the field of psychology and "in particular the testimony given by children whether there are motivations or memory issues that could affect their testimony presented to the court and therefore affect the level of proof offered to a jury and to this court at a trial." The State responded and argued that the doctor's claim that he would be testifying to the veracity of the child was wholly inadmissible under Louisiana law, pursuant to La. C.E. art. 702. The State also argued that pursuant to La. C.E. art. 704, an expert could not express an opinion as to the guilt or innocence of the accused. The trial court stated that it appeared that Dr. Nelson would be "invading the province of the jury, which is to judge the credibility of the witness" who was a child victim in this case. The court thereafter ruled to exclude Dr. Nelson's testimony. Defense counsel objected to the ruling and asked if he could brief the issue. The trial court allowed him additional time to ask for the court to reconsider with a brief.

On February 16, 2023, defendant filed a "Motion to Reconsider Denial of Defense Expert's Testimony," arguing that Dr. Nelson had experience testifying in courts and he would not violate La. C.E. art. 702. Defendant stated that Dr. Nelson's testimony concerned the reasons children fabricate stories of abuse and

---

[8] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

memory problems, which would help a jury consider the evidence presented to them and broaden their understanding to reach their own conclusions.  Defense counsel argued that defendant had a right to present a defense in compliance with the rules of evidence.

In response, on February 22, 2023, the State filed a "Motion *in Limine* and Incorporated Memorandum to Prevent the Introduction of Inadmissible Defense Expert Witness Testimony."  The State argued that any opinion Dr. Nelson would offer would bear on the credibility and veracity of the victim, amounting to an opinion of defendant's guilt or innocence.  The State also argued that Dr. Nelson's testimony would be irrelevant.

On February 23, 2023, the trial court heard argument as to the motions.  The trial court denied defense counsel's motion to reconsider and granted the State's motion *in limine*.  Defense counsel filed a writ application with this Court; however, the writ application was not considered because it was untimely.  *See State of Louisiana v. Elias Abrego*, 23-K-150 (La. App. 5 Cir. 3/28/23) (unpublished writ disposition).

Louisiana Code of Evidence article 103, entitled "Rulings on evidence," provides, in pertinent part:

> A. Effect of erroneous ruling.  Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> * * *
>
> (2) Ruling excluding evidence.  When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.

When a defendant fails to proffer the substance of the excluded testimony, he is procedurally barred from assigning the error on appeal.  *State v. Strickland*, 11-715 (La. App. 5 Cir. 3/27/12), 91 So.3d 411, 418.  Thus, in order to preserve for review an alleged error in a ruling excluding evidence, counsel must make known

to the court the substance of the excluded testimony.  *State v. Magee*, 11-574 (La. 9/28/12), 103 So.3d 285, 326, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56, 187 L.Ed.2d 49 (2013).  This can be effected by proffer, either in the form of a complete record of the excluded testimony or a statement describing what the party expects to establish by the excluded evidence.  *Id*.

After careful review and consideration of the entire record, we find that defense counsel failed to proffer the excluded testimony of Dr. Nelson, and further failed to adequately make known to the court the substance of Dr. Nelson's excluded testimony.  Thus, pursuant to La. C.E. art. 103(A)(2), the alleged error concerning the exclusion by the court of Dr. Nelson's testimony at trial was not properly preserved for review on appeal.  We are thus precluded from addressing the merits of this assignment of error.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

### *Verdict*

The verdict sheet reflects that the jury found defendant guilty as charged on all counts.  The minute entry also reflects the same.  However, as to the verdicts, the transcript only contains the court reporter's notes that state: "(Jury returned a guilty as guilty as charged.)"  Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal.  However, inconsequential omissions or slight inaccuracies do not require reversal.  An incomplete record may nonetheless be adequate for appellate review.  A defendant is not entitled to relief in this situation absent a showing of prejudice based on the missing portions of the transcript.  *State v. Bright*, 03-489 (La. App. 5 Cir. 10/28/03), 860 So.2d 196, 202, *writ denied*, 03-3409 (La. 4/2/04), 869 So.2d

875. While the transcript does not include the trial court's or court reporter's recitation of the verdicts, as discussed, the written verdict sheet is contained in the record and reflects that defendant was found guilty as charged on all counts. The verdict sheet is also signed by the foreperson. Additionally, the jury was polled, and the polling slips reflect that all twelve jurors found defendant guilty as charged. Accordingly, we find that defendant cannot demonstrate any prejudice from the failure of the record to include the transcript of the verdicts.

### *Sex Offender Registration*

The record reflects that the trial court failed to inform defendant of the sex offender registration requirements in accordance with La. R.S. 15:540, *et. seq*. Defendant's convictions of first degree rape (aggravated rape) upon a known juvenile in violation of La. R.S. 14:42, sexual battery where the child was under the age of thirteen in violation of La. R.S. 14:43.1, and indecent behavior with a juvenile under the age of thirteen in violation of La. R.S. 14:81, are defined as sex offenses under La. R.S. 15:541(24). La. R.S. 15:543(A) requires that the trial court notify a defendant charged with a sex offense in writing of the registration requirements of La. R.S. 15:542.

This Court has recognized that the trial court's failure to provide the notification constitutes a patent error and warrants a remand for written notification, even where a life sentence has been imposed. *See State v. Simoneaux*, 23-400 (La. App. 5 Cir. 7/10/24), 392 So.3d 949 (citing *State v. Doucet*, 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598, 609-10, *writs denied*, 18-77 (La. 10/8/18), 253 So.3d 789, and 18-196 (La. 11/5/18), 255 So.3d 1052, *cert. denied*, -- U.S. --, 139 S.Ct. 2676, 204 L.Ed.2d 1079 (2019)). Accordingly, we remand this case to the trial court with instructions to the trial judge to inform defendant of the registration requirements for sex offenders by sending appropriate written notice to

24-KA-133                                            17

defendant and to file written proof in the record that defendant received such notice.

## **DECREE**

For the foregoing reasons, defendant's convictions and sentences are affirmed.  This matter is remanded to the trial court with instructions to the trial judge to inform defendant of the registration requirements for sex offenders by sending appropriate written notice to defendant and to file written proof in the record that defendant received such notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 18, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-133

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)      THOMAS J. BUTLER (APPELLEE)       MICHAEL H. IDOYAGA (APPELLANT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053